UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

                      CASE NO. 8:19-cr-529-TPB-AAS

v.

CHRISTOPHER HUGHES,
    Defendant.
_____

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, Christopher Hughes, through undersigned counsel, pursuant to U.S.S.G. §3B1.2 and 18 U.S.C. §3553(a), hereby files this Sentencing Memorandum in support of a reasonable sentence, which is not greater than necessary to accomplish the purposes of sentencing, as enumerated in 18 U.S.C. §3553(a)(2). Mr. Hughes respectfully requests a downward variance from the guidelines calculation as calculated by the PSR, or a sentence within the guidelines as calculated by defense.

Mr. Hughes was born in St. Petersburg, Florida, and has lived a difficult life, full of abandonment and addiction to illegal drugs. He was abandoned by his mother at the age of around seven or eight, because she did not want to have children, and he has had an unstable relationship

Page **1** of **13**

with his father who was an alcoholic and used illegal drugs such as marijuana, heroin, and PCP, while Hughes was growing up. Hughes' early years involved watching his parents physically fight and he was often struck trying to intervene and stop his parents from fighting. After moving out of state to Kentucky and then to several cities in FL, Hughes ended up residing in St. Petersburg again and was residing in Pinellas County at the time of his arrest for this case.

Throughout his life Hughes has experimented with various illegal drugs, including marijuana, methamphetamine, heroin, and fentanyl. Unfortunately, he is addicted to heroin and fentanyl and was admitted to a local hospital last year due to a fentanyl overdose. Hughes' criminal history, which is almost all non-violent, stems from his addiction to illegal drugs. His addiction to illegal drugs is what got Hughes in the position that he is in today, convicted of crimes that he would not have committed had he not been dealing with the demon of illegal drug addiction.

Mr. Hughes cooperated with law enforcement and gave an interview shortly after his arrest, and he has provided a proffer to the US Attorney's Office and agents involved in the prosecution of this case.

Hughes intends to continue to fully cooperate with the US Attorney's Office and continue to provide complete and truthful information about his involvement in this case and the involvement of his co-defendant, Marvin Mitchell, who was the leader of this conspiracy.

## I. INTRODUCTION AND CASE BACKGROUND

Mr. Hughes is a 44-year-old non-violent individual who stands before this court convicted of one count of Conspiracy to Distribute and Possession with Intent to Distribute a Mixture and Substance Containing Detectable Amounts of Heroin, Fentanyl, and Cocaine, and one count of one count of Possession with Intent to Distribute a Mixture and Substance Containing Detectable Amounts of Fentanyl. On March 4, 2022, Mr. Hughes appeared before United States Magistrate Judge Thomas Wilson and plead guilty to the above charges pursuant to a written plea agreement. Pursuant to the written plea agreement and Rule 11(c)(1)(A), at the time of sentencing the government agrees to move for the dismissal of Count Four of the four-count Superseding Indictment in this case.

Mr. Hughes requests that this Honorable Court consider the totality of the § 3553(a) factors as applied to him and sentence him to a downward

variance from the guidelines or a sentence within the guidelines as calculated by defense. This sentence would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## II.   GUIDELINES CALCULATION

### A. GUIDELINES CALCULATION AS CALCULATED IN THE PSR

Mr. Hughes's Presentence Investigation Report (PSR) lists his base offense level at 30, pursuant to USSG §2D1.1, because of a converted drug weight of 2,880.10 kg. The PSR then added two levels because it alleged that Mr. Hughes maintained a premises for the purpose of manufacturing or distributing a controlled substance, pursuant to USSG § 2D1.1(b)(12). Lastly, the PSR subtracted three levels for Mr. Hughes's acceptance of responsibility and entry of a timely plea pursuant to U.S.S.G. § 3E1.1(a) and (b). Taking all this into account, Mr. Hughes's Total Offense Level is calculated at level 29.

According to the PSR Mr. Hughes's prior criminal history places him in Criminal History Category VI, with a total criminal history score of 13. Therefore, the PSR estimates his guidelines range to be 151-188 months imprisonment.

## B. Hughes' objections to the PSR and Defense's Guidelines Calculation

Mr. Hughes objects to the drug weight amount computation in paragraphs 46, 48, and 57 of the PSR, which is being used to calculate Mr. Hughes' base offense level at a level 30 pursuant to USSG §2D1.1(a)(5) and (c)(5). The reasons for this objection are that the PSR uses a statement given by Mr. Hughes' co-defendant, Emma Leifer, which seems to have been meant purely as an estimate by her, to attribute to him the sale of a mixture containing 280 grams of fentanyl analogue. Hughes was only involved in this conspiracy for a period of about two weeks, and he did not possess with intent to distribute the same weight of narcotics every day that he was involved. There were some days when the weight was less and others where it was higher. Other people were also involved in the conspiracy and sold drugs for co-defendant Mitchell without Mr. Hughes' involvement or participation. The calculation provided in the PSR raises Mr. Hughes' drug weight amount accountability from 6 grams of a mixture containing fentanyl analogue, which was the amount seized during the execution of search warrants related to this case, to 286 grams of fentanyl analogue. This addition of 280 grams of drug weight, an almost 50-fold increase, is

inaccurate and unreasonable because it is based solely on an approximate figure given by co-defendant Leifer. Hughes does not object to this figure so as not to be held fully responsible for his actions; he objects to it because it greatly exaggerates his involvement in the conspiracy at issue.

Hughes also objects to the specific offense characteristics enhancement in paragraph 58, where the PSR adds two levels pursuant to USSG § 2D1.1(b)(12), for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. Defense objects to this enhancement because the premises were solely maintained and controlled by co-defendant Mitchell. Hughes did not rent out the room or pay for it, and it was not rented under his name. All the activity occurring in the room was under Mitchell's direct supervision, authority, and control. Mr. Hughes was acting under orders from co-defendant Mitchell at all times when using the room, and only stayed in the room because he was homeless and had no other place to live.

Based on the above Hughes objects to the base offense level of 30 in paragraph 57 of the PSR, the adjusted offense level of 32 in paragraph 62 of the PSR, and the total offense level of 29 in paragraphs 66 and 146

of the PSR. Defense believes Mr. Hughes' base offense level should be calculated at level 22 (based on a converted drug weight of 80.10 kg (conversion for 6 grams of fentanyl analogue and 5.63 grams of crack cocaine)), and a total offense level of 19 (taking into account a three-level reduction for acceptance of responsibility). With a criminal history category of VI, Mr. Hughes' guideline imprisonment range would be 63-78 months.

Hughes also objects to paragraph 162 of the PSR, which opines that pursuant to USSG § 5K2.1, the death of Fletcher would warrant a departure from the applicable sentencing guideline range. The plea agreement signed in this case specifically excluded responsibility for causing any death related to the charges that Mr. Hughes plead to. It is also defense's position that Mr. Hughes' criminal accountability is accurately and adequately represented pursuant to the guidelines offense level as stated above in defense's calculation.

Hughes also objects to paragraphs 21 and 22 of the PSR in which it is alleged that Lynette Fletcher's friend, Gregory Martin, stated that he had purchased narcotics from Hughes hours before Fletcher's death. It is defense's position that this alleged statement is unreliable because

Mr. Martin is not a credible witness. Mr. Martin is currently in the FL Department of Corrections system for two drug convictions out of Pinellas County (Sale/Manufacture/Distribution of Methamphetamine and Possession of Methamphetamine), and he has at least six other prior felony convictions out of Pinellas County. Also as stated above, the plea agreement signed in this case specifically excluded responsibility for causing any death related to the charges that Mr. Hughes plead to.

Lastly, Hughes objects to the offense conduct information provided in paragraphs 35, 36, 37, as the statements attributed to co-defendant Emma Leifer do not accurately reflect Mr. Hughes' conduct and are greatly exaggerated. Hughes also objects to paragraphs 40, 42, and 45 because those statements attributed to Mr. Hughes paint an inaccurate picture of Mr. Hughes' involvement in Mitchell's enterprise. At the time of his involvement in this case Hughes was in a desperate situation and only stayed at the Express Inn in Clearwater, FL because co-defendant Mitchell offered him a place to stay. At the time Hughes was addicted to illegal drugs and was actively using while staying at the motel. He did not start working for Mitchell until about the last two weeks of his stay, and estimates that during that time he was involved in the possession

with intent to distribute about 2 ounces and some grams of fentanyl, or about 57 grams. Hughes is ready to explain the details of the enterprise further and his involvement at co-defendant Mitchell's Sentencing and at his Sentencing.

### III. SECTION 3553(A) FACTORS AS APPLIED TO CHRISTOPHER HUGHES

**A DOWNWARD VARIANCE FROM THE GUIDELINES CALCULATED IN THE PSR OR A SENTENCE WITHIN THE GUIDELINES AS CALCULATED BY DEFENSE WOULD BEST SATISFY THE GOALS OF § 3553(A).**

Although the guidelines are "the starting point and the initial benchmark" for determining the appropriate sentence, "[t]he Guidelines are not the only consideration" and the sentencing court must consider all of the 18 U.S.C. §3553(a) factors in crafting a sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). When considering the §3553(a) factors, the sentencing judge may give more weight to some factors than others. *See United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007).

This Honorable Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)(2)," which are "the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2).

A downward variance is appropriate in this case based on the above case law and the following mitigating factors, all of which are highly relevant to the purposes of sentencing.

## IV.   TOTALITY OF THE § 3553(A) FACTORS.

Mr. Hughes was not the leader of this conspiracy. He was a participant who got involved because of his addiction to illegal drugs. This is clearly evidenced by the fact of Hughes' overdose on fentanyl last year, which required hospitalization. During his few weeks of involvement in possession with intent to distribute fentanyl, Hughes was answering directly to co-defendant Mitchell and acting on

Mitchell's behalf. He got involved because he was homeless and Mitchell offered him a place to stay in exchange for helping him sell illegal drugs. Mitchell was effectively Hughes' "boss" during the time that Hughes was involved in this conspiracy, and he directed Hughes' participation in the conspiracy, even going so far as to hit Hughes in the face for allowing co-defendant Emma Leifer to give $20 worth of Narcan to someone who had overdosed.

Mr. Hughes is extremely remorseful for his actions related to this case. Hughes's addiction to illegal drugs is what put him in the bad situation that led up to this case. Since the age of 28, for approximately the last 16 years, Mr. Hughes has been addicted to heroin and fentanyl and his addiction has led to a horrible life full of pain and desperation. Even though Mr. Hughes has participated in a substance abuse treatment program in the past, he is in great need of continued long-term substance abuse treatment so he can conquer the addiction that has plagued him for most of his life.

Mr. Hughes is looking forward to a better life after serving his prison sentence for this case. He would like to get treatment for his addiction

to illegal drugs and work toward living a more productive and beneficial life.

Unfortunately, Mr. Hughes is also in poor physical health, as he suffers from Hepatitis C, which causes him sporadic abdominal pain, and COPD, which causes shortness of breath

Undersigned counsel believes that the totality of the § 3553(a) factors, discussed above as applied to Mr. Hughes, warrant a sentence within the guidelines as calculated by defense or a downward variance from the guidelines as calculated in the PSR. Mr. Hughes's remorse for the offense, his subordinate role to co-defendant Mitchell in this crime, his cooperation with the US Attorney's Office, his addiction to illegal drugs and need for treatment, and his commitment to start a new chapter in his life, all provide this Honorable Court with a reasoned, coherent, and sufficiently compelling basis to sentence Hughes to a downward variance as calculated in the PSR, or a sentence within the guidelines as calculated by defense. This sentence will be "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Due to all of the above factors, counsel respectfully requests that this Honorable Court sentence Mr. Hughes to a downward variance sentence if the court accepts the guidelines as stated in the PSR, or to a guidelines sentence if the court accepts defense's guidelines calculation. Counsel also requests that this Honorable Court find that this sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

        Respectfully submitted,

        OMAR ABDELGHANY
        550 N Reo St., Suite 300
        Tampa, FL 33609
        Telephone: (813) 461-5291
        attorney@tampa-criminal-attorney.com

        */s/ Omar Abdelghany*
        Omar Abdelghany
        Fla. Bar No. 105682

## **CERTIFICATE OF SERVICE**

  I HISEBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send a notice of the electronic filing to all parties of record, on this 29th day of June, 2022.

        */s/ Omar Abdelghany*
        Omar Abdelghany
        Fla. Bar No. 105682